## THE SUFFOLK COMPANY *v.* HAYDEN.

1. Where a party having made application for a patent for certain improvements, afterwards, *with his claim still on file*, makes application for another but distinct improvement in the same branch of art, in which second application he describes the former improvement, but does not in such second application claim it as original, the description in such second application and non-claim of it there, is not a dedication of the first invention to the public.
2. In cases where there is no established patent or license fee, general evidence may be resorted to in order to get at the measure of damages; and evidence of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results is competent and appropriate.
3. The jury, in ascertaining the damages, upon this sort of evidence, is not to estimate them for the whole term of the patent, but only for the period of the infringement. And a recovery does not vest the infringer with the right to continue the use.
4. Where the patent-office grants a patent for one invention, and afterwards, upon a claim filed previously to that on which such patent has been granted, issues another, the second patent, not the first, is void.

IN December, 1854, Hayden, being the inventor of improvements in cotton cleaners, made application to the commissioner for a patent therefor.

The improvements consisted in certain described changes made by Hayden in the *interior* arrangements of an elongated trunk previously in use for cleaning cotton.

While this application *was still pending*, Hayden made another distinct improvement, not in the interior arrangements of the elongated trunk, but in the *form* of the trunk.   This

improvement consisted in increasing, towards the rear end of the trunk, that part of its area above the screen (which divided it horizontally into two distinct parts), so that as the air moved through the trunk towards its rear, the space for its passage being enlarged, the air would gradually move more slowly.

Hayden desired, apparently, to claim this new improvement in the form of the trunk, both separately, *and in combination with his other improvements in the interior arrangements of the trunk,* as to which his application was then pending. Accordingly, in November, 1855, he filed his application for a patent, and on the 17th day of March, 1857, letters were issued to him, in the specification whereof he claims the improvement in *the form of the trunk,* both separately, and in combination with his improvements in the interior arrangements of the trunk; but he *made no claim in this specification to his improvements in the interior arrangements of the trunk.*

It did not appear that Hayden was guilty of any laches, or was in any default in reference to the delay of the commissioner to act on his first application for a patent for improvements in the interior arrangements. of the trunk made in December, 1854. For some cause, however, the commissioner had not acted on that application down till June, 1857; and in that month Hayden made another application for a patent, for what the judge at the trial, at the request of the defendants, ruled to be the same improvements, previously applied for in December, 1854; and upon this second application a patent was granted, bearing date December 1, 1857.

[It may be here mentioned incidentally, since the matter was made a point by counsel and is referred to by the court —though the patent of December 1, 1857, was the only one in suit—that the commissioner finally acted on the original application of December 1854, and on the 11th of September, 1860, granted on *it* a patent—and as was *alleged,* though not proved, for the *same improvement* covered by the patent of December 1, 1857.]

Hayden having sued the Suffolk Manufacturing Com-

pany, in the Massachusetts District, for infringement of this last-mentioned patent, the defendants' counsel at the trial, requested the judge to rule that the patent was void, because the improvements in the interior arrangements of the trunk, which were described and claimed in it, being also described and *not* claimed in the patent of the 17th of March, were *by the legal operation of the last-mentioned patent surrendered to the public use.*

The judge refused so to rule, and on error this refusal raised here the first question; the counsel for the Suffolk Company taking the same position here as below.

A second question was on the law as delivered to the jury on the matter of damages.

It appeared that no sales had been made of the patent-right by the plaintiff, or of licenses for the use of it, so as to establish a patent or license-fee as a criterion by which to ascertain the measure of damages. The court below accordingly permitted evidence, after objection, as to the uses and advantages of this improvement over the previous methods of cleaning cotton. And an expert testified that the results were—a more thorough cleaning of the cotton, the saving of all the good fibres, less damage to the staple, the freeing of the room from dust, and the machinery from dust, dirt, and sand; the keeping of the machinery in better order at less cost, and dispensing with one grinder of the cards in consequence of the diminution of dirt and sand, expelling fine dust and dirt not before got out, less breakage of the yarns, &c.

There was, also, evidence of the amount of cotton that had been cleaned at the defendants' mills by the plaintiff's improvement within the period for which the damages were claimed.

The court below, in its charge to the jury, stated the rule as prescribed by the statute, which is the actual damages that the plaintiff has sustained from the infringement; and, while speaking of the patent of December, 1857, among other things, observed:

" Then you will look at the value of the thing used, and ascer-

tain that value by all the evidence as to its character, opera-
tion, and effect. You will take into view the value of that
which the defendants have used belonging to the plaintiff, to
aid you in forming a judgment of the actual damage the plain-
tiff has sustained."

The jury having found for the plaintiff and damages
$1774, the charge as above given was assigned by the de-
fendant for error; and made a second question in this court;
the counsel for the defendants arguing that the court in the
instructions quoted gave a latitude to the jury in the esti-
mate of damages beyond that of the use or value of the im-
provements comprised in the patent in question; that they
might take into view the improvements on the patent of the
17th March, 1857; and arguing also that the value of the
improvement was not a proper matter for the jury to con-
sider when making their estimate of damages.

*Messrs. Caleb Cushing and Causten Browne, for the Suffolk
Company, plaintiff in error.*

· Mr. Justice NELSON delivered the opinion of the court.*

The first point of the plaintiff in error is, that the descrip-
tion, in the patent of March, of the improvement patented
the December following, and on which the present suit is
brought, and omission to claim it on such earlier patent,
operated as an abandonment or dedication of it to the pub-
lic, and that for this reason the subsequent patent of 1st
December was void. But the answer to this ground of de-
fence is, that it appeared that Hayden, the patentee, had
pending before the commissioner of patents an application
for this same improvement at the time he described it in the
specification of the 17th March, which was, doubtless, the
reason for not claiming it in this patent. The description in
no sense affected this application thus pending before the
commissioner; and, while it remained before him, repelled
any inference of abandonment or dedication from the omis-
sion to again claim it.

---

* The Chief Justice and Davis, J., not having sat, being out of town.

This original application before the commissioner for a patent, among other things, for an improvement in the screen of the long trunk, not having been acted upon by that officer, a new application was made by Hayden, separately, for this improvement, and which resulted in the patent of 1st December, 1857, on which the present suit is brought.

We do not perceive any objection to this proceeding. It simplified the application, and disembarrassed it from its connection with other improvements claimed; and, doubtless, hastened the granting of the patent. The office, however, subsequently acted upon this original application, and, on the 11th September, 1860, granted a patent to the plaintiff, and, as is alleged, for the same improvement embraced in the patent of the 1st December, 1857, the one in question. And it is insisted that, for this reason, this prior patent for the same improvement is void. This is, obviously, a misapprehension. The last, not the first, is void.

We may add, on looking at the patent of 11th September, 1860, it does not appear that it was granted for the same improvement. It is a patent for a combination of this improvement with other devices.

*As to the question of damages.* It is supposed by the counsel for the defendants that the court, in the instructions quoted on preceding pages, gave a latitude to the jury in the estimate of damages beyond that of the use or value of the improvements embraced in the patent in question; that they might take into consideration the improvements on the patent of the 17th March, 1857, for widening one end of the trunk. But it is quite apparent that the court was speaking all the time with reference to the improvement in the patent in suit, and the only one in contestation. It is, also, urged that the value of the improvement was not a proper subject for the consideration of the jury in estimating the damages. This may be admitted. But looking at the term *value*, in the connection in which it was used, it is quite clear that it had reference only to the utility and advantages, or value of the use of the improvement over

the old mode of cleaning cotton; not the value of the patent itself.

This question of damages, under the rule given in the statute, is always attended with difficulty and embarrassment both to the court and jury. There being no established patent or license fee in the case, in order to get at a fair measure of damages, or even an approximation to it, general evidence must necessarily be resorted to. And what evidence could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner, by the piracy, instead of the purchase of the use of the invention.

It is proper to say, as was said in the court below, that the jury, in ascertaining the damages upon this evidence, is not. to estimate them for the whole term of the patent, but only for the period of the infringement. A recovery does not vest the infringer with the right to continue the use, as the consequence of it may be an injunction restraining the defendant from the further use of it.

JUDGMENT AFFIRMED.