THOMSON–HOUSTON ELECTRIC CO. v. ILLINOIS TELEPHONE CONST. CO. et al.

(Circuit Court, N. D. Illinois, E. D.    February 26, 1906.)

No. 28,041.

1. PATENTS—EFFECT OF EXPIRATION—COMBINATION CONTAINING PATENTED ELEMENT.

On the expiration of a patent for a combination, the use of such combination becomes free to the public, notwithstanding the fact that it contains as one of its elements a device covered by another patent to the same patentee which has not expired.

2. SAME—SUIT FOR INFRINGEMENT—ESTOPPEL.

The seller of a machine intended to be used in connection with a device covered by a patent owned by him, and which is inoperative without such device, impliedly grants the right to the purchaser to use it, and is estopped to maintain a suit to enjoin such use as an infringement of the patent.

3. SAME—PRELIMINARY INJUNCTION—CONDUCTOR SWITCH FOR ELECTRIC RAILWAYS.

A motion for a preliminary injunction to restrain infringement of the Van Depoele patent, No. 424,695, for a conductor switch for electric railways, by the use of the device of the expired patent No. 393,278 to the same patentee, denied.

In Equity.    Suit for infringement of patent.    On motion for preliminary injunction.

Betts, Sheffield & Betts and Rector & Hibben, for complainant.
Thomas F. Sheridan and Nathaniel C. Sears, for defendants.

KOHLSAAT, Circuit Judge.    This cause is based upon infringement of patent No. 424,695, issued to Charles J. Van Depoele April 1, 1890, for an improvement in suspended switch and traveling contact for electric railways, and is now before the court upon a motion for a preliminary injunction.    The claims involved in the proceeding are those numbered 3, 4, 11, 19, 20, 23, 25, 26, and 27, which read as follows:

"(3) The combination, with an overhead wire for receiving an underneath contact, of a switch plate attached to the wire in about the same horizontal plane as the wire.

"(4) The combination of a track having switches, an overhead conductor above the track and having switches, and a car on the track provided with a contact-carrying arm arranged to engage the conductor at a point in rear of the front wheels of the car."

"(11) The combination, with an overhead line-wire, of a grooved contact device pressed against the wire and receiving the wire within the flanges of the groove, and a guiding switch-plate connected to the wire against which the said flanges bear in passing from one line to another."

"(19) In an electric railway, the combination, with branching overhead conductors, of an upwardly-pressed contact-arm carrying a grooved wheel embracing the conductor, and a switch-plate at the branching point adapted to receive the tips of the wheel-flanges, and provided with depending ribs, between which the wheel is free to move laterally to engage with one of the branch conductors.

"(20) In an electric railway, the combination, with an overhead switch plate having depending ribs, but open at its extremities, of main and branch conductors extending from its two extremities, respectively, a vehicle, an

upwardly-pressed contact-arm attached to the vehicle and tending to move laterally therewith, and a track-switch for the vehicle located so as to operate in advance of the conductor-switch."

"(23) The combination, with branching overhead conductors, of a vehicle having a laterally-swinging contact-arm pressed upward to engage the conductors, and a switch-plate at the branching point having depending sides, but open at its extremities, the interior width of the plate between the sides being greater than the thickness of the contact-wheel, whereby the wheel is free to move laterally with relation to the main conductor and engage one of the branching conductors."

"(25) In a branching electric railway, the combination of a track-switch, an overhead conductor-switch, and a vehicle having a rearwardly-extending contact-arm, whereby the track-switch will operate in advance of the conductor-switch.

"(26) In a branching electric railway, the combination, with a vehicle, of a track-switch, an overhead conductor-switch, and a contact-arm extending upward from the vehicle to the conductor, and so located relatively to the length of the vehicle and the two switches that the lateral movement of the vehicle will give a corresponding movement of the contact device on the conductor-switch.

"(27) In a branching electric railway, the combination, with a vehicle, of a track-switch, a contact device consisting of a trailing spring-pressed arm having a grooved contact-piece embracing the conductor and guided thereby, the said arm being joined to the car and tending to move laterally therewith, and an overhead conductor-switch adapted to engage the contact-piece and whereby the extremity of the arm is flexibly guided from main to branch conductor."

In substance it will be seen that the patent involves an overhead conductor in connection with a switch-plate, substantially in the same plane, made to receive an underneath contact with a trolley arm and having depending guides or flanges to direct the trolley wheel into the desired branch of the switch. In connection with this switch-plate, the claims call variously for necessary operating elements, such as surface tracks, switch tracks, a spring pressed and freely jointed trolley pole contacting from below with the overhead switch some appreciable distance behind the forward wheels of the vehicle, so that it may be directed by the movement of the car into the proper branch of the switch, a car or other vehicle moving upon the tracks, and a grooved contact piece or wheel on the arm or pole. The only feature of the patent deemed necessary to be considered here is the switch, which seems to me to be of a primary character, mainly in the fact that it leaves the trolley wheel free to respond to the actuating movements of the car communicated through the trolley arm. In adjusting the conducting wire to the switch, there was discovered a slight perpendicular jog. The wheel, traveling upon its flanges, would necessarily spring up somewhat as it left the open ends of the switch and again contacted with the wire. To improve upon the device of the patent in suit in this and other respects, and while the patent of this suit was pending in the Patent Office (delayed without the fault of complainant's grantor, it is claimed), complainant applied for, and received on November 20, 1888, patent No. 393,278 for what he terms certain new and useful improvements in switches for overhead conductors. This patent covers six claims, only claims 2 and 3 of which are set up in defense in defendant's brief. They read as follows:

"(2) A switch for electric conductors, comprising a contact plate or surface, ribs or arms attached to said plate and separate at their inner extremities to allow a contact device to pass from one to the other between them in contact with the plate, and electrical conductors secured to the ribs or arms, substantially as described.

"(3) A switch for electric conductors, comprising a contact plate or surface, ribs or arms electrically connected therewith, and conductors secured to the ribs or arms and arranged to permit the passage of a contact wheel from one to the other across the space between said conductors bridged by the plate or surface, substantially as described."

The device of these claims differs from that of the patent in suit in placing ribs or raised track pieces against the under face of the switch along which the grooved trolley wheel may travel with certainty. These ribs are shaped to fit the wheel groove, have electrical connection with the conductor, and are so adjusted as to receive the wheel in the same plane as that which it occupies with reference to the conductor. The ribs terminate before reaching the central portion of the switch plate, leaving the wheel free to move along the under side of the switch plate to the proper branch track. This device amounts to a substantial improvement upon the patent in suit and does not fall within the rule against double patenting. It does, however, appropriate the patent in suit bodily, so far as necessary for the new combination. Why any one prosecuting an interference with regard to the patent in suit so vigorously as to succeed in delaying its issue for four years should allow this improvement patent to go out without an attempt to protect his rights may well cast some doubt upon the warlike spirit of the contestants. It is the device used by the defendants.

On February 5, 1889, and while the patent in suit was yet in interference, as it is asserted, in the Patent Office, complainant's grantor was granted another alleged improvement patent for an improvement in overhead switches, No. 397,451. The 11 claims of this patent differ from patent No. 393,278, in that they call for a conductor connected with the upper portion of the switch box—that is, on top of it—and outwardly flaring openings between the flanges at the extremities of the box. Claim 1 provides for a "contracted portion" in one or more of the compartments of the switch box "adjacent to its extremity." Claims 2 and 3 thereof sufficiently set out the substance of the patent and read as follows:

"(2) A switching device for electric railways, consisting of an open-bottom metallic box or frame secured to and depending from the under side of a suspended conductor and formed with two or more branching compartments leading therethrough, the extremities of such compartments flaring outwardly toward the conductor to form lateral guides and inwardly to facilitate the passage of the contact device, substantially as described.

"(3) A switching device for electric railways, comprising an open-bottom box, conductors connected to the upper portion of the box, and a guide rib or ribs connecting the extremity or extremities of the switch-box with the conductor, substantially as described."

Patent No. 393,278, expired November 20, 1905, and prior to the commencement of this suit. Patent No. 397,451 expired the 5th day of this month (February, 1906). The patent in suit will not expire until April 1, 1907. The application for the issue of the last-named

patent was originally filed on March 12, 1887, and on division had this application was filed October 22, 1888. The application for patent No. 393,278 was filed August 22, 1888, and that for patent No. 397,-451 on November 12, 1888.

The suit is brought to restrain the defendants from using a device covered by a patent which had expired at the time of the filing of the bill, and is based upon the proposition that, while the patent as a whole had gone to the public, yet, inasmuch as it required the use of the patent in suit as one of its elements, the combination could not be appropriated by the public until the expiration of the patent in suit without infringing the latter; thus in effect claiming that complainant has the right to the exclusive benefit of the improvement patent for a term of 20½ years instead of 17. The patent in suit has been sustained in several apparently well litigated suits. Thomson-Houston Electric Co. v. Elmira & H. Ry. Co., 71 Fed. 396, 18 C. C. A. 145; Same v. Ohio Brass Co., 80 Fed. 713, 26 C. C. A. 107.

For a defense to this application, defendants set up: (1) Expired patent No. 393,278 aforesaid; (2) expired patent No. 397,451 aforesaid; (3) that complainant is estopped from claiming the relief sought, because it had sold defendant locomotives which required the alleged infringing device to make them operative.

The claim of defendants that the above-named two patents contain all the elements of the patent in suit and are in substance identical therewith cannot be sustained. As above stated, patent No. 397,451, taking the drawings and specifications into consideration, attempts to improve upon the device of patent No. 393,278. It assumes to add to the latter a feature which appears in the drawings of both the patent in suit and No. 393,278, to wit, the "contracted portion adjacent to its [the switch's] extremity." It would take any one's ingenuity to discover any difference in this respect between the drawings of all three of these patents. There is a slight difference in the manner in which the contact with the conductors is obtained, for which no advantage is claimed or is conceivable. It is not, however, deemed necessary to determine now the validity of patent No. 397,451. It may be invalid, but it does not in term or substance lay any foundation for the defense of double patenting in this proceeding.

For the first time in the history of the litigation of these overhead switch patents, there is before the court the fact that one of the patents involving the use of the invention of the patent in suit as an element has expired. No case is produced to the court in which the effect of that fact upon the question here involved has been material. Nor have I been able to find any such case. That it has not been raised and settled before now in litigation growing out of the intricacies of some half a million patents is surprising. In the case of Thomson-Houston Electric Co. v. Ohio Brass Co., supra, the Circuit Court of Appeals for the Sixth Circuit treats the subject academically, and comes to the conclusion that, although the improvement patent has expired, yet, inasmuch as the primary patent constituting one of the elements of the improvement patent has not expired, the expired combination patent, as a combination, does not go to the

public, but is still under the control of the primary patent until the latter expires. The case turned upon other points, and this dictum of the court was delivered by way of argument. Clause 8 of section 8 of article 1 of the Constitution gives to Congress the power "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." Pursuant to the foregoing, Congress, in section 4884, Rev. St. [U. S. Comp. St. 1901, p. 3381] authorized the grant of a patent for the term of 17 years. By section 4888, Rev. St. [U. S. Comp. St. 1901, p. 3383], the applicant is required to give such an exact description of the matter sought to be patented as will enable "any person skilled in the art or science to which it appertains or with which it is most nearly connected to make, construct, compound and use" it. An inventor has no natural right to a monopoly in the use of his invention once it is made public. His right rests wholly upon the provision of the Constitution and statutes above set out. The instant the statute ceases to be operative with regard to the patent, the right of the public intervenes. This right of the public is a natural right, suspended for 17 years by virtue of the statute. In U. S. v. American Bell Telephone Co., 167 U. S. 224, 17 Sup. Ct. 809, 42 L. Ed. 144, Justice Brewer, speaking for the court, says:

"All that the patent law requires is that when a patent expires the invention covered by that patent shall be free to every one, and not that the public has the right to the use of any other invention, the patent for which has not expired, and which adds to the utility and advantage of the instrument made as the result of the combined inventions."

Neither the statute nor the Supreme Court makes any exception covering the case of a combination patent which has for one of its elements the device of a patent not yet expired. If the device used by defendants herein, being that of an expired patent, is not now free to be used by the public after complainant has had 17 years' monopoly of it, then what interest had the public in that patent? If the right of the public to a disclosed invention is a natural right, how can a statutory limitation upon that right be extended by implication? When complainant took out this improvement patent, the patentee was required to disclose specifically all matters necessary to enable those skilled in the art to produce and enjoy the device. This statutory requirement must be read into the patent. What a farce to say that the public is entitled to all this, but must not avail itself of the knowledge! If the use of the device of the expired patent constitutes the appropriation of the whole of the patent in suit—that is, if all of its possible uses are involved—then there arises a case of double patenting.

In Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 732, 33 C. C. A. 255, the Circuit Court of Appeals for the Sixth Circuit says:

"If, therefore, the Huss patent for his fabric as a separate invention can stand, the public would infringe it if, after his tire patent shall expire, they undertake to practice the invention claimed in the tire patent, and which necessarily involved the use of his fabric. In other words, the monopoly of the first patent would be prolonged until the later patent shall expire. We think there is no escape from the conclusion that both patents now in suit

are void, and for a like reason. One cannot lawfully have two patents for one invention. When once the invention has been used as the consideration of a grant, its value for that purpose is spent, and there is nothing in it on which a second grant can be supported. And this rule holds good, though the scope of the patents may be different."

The facts of this case do not seem to me to warrant this assumption. When complainant launched the improvement patent, he sent out upon a 17-year cruise all the rights he had in his main patent in suit here as applied to that particular combination. It is within the rights of an inventor to dole out his inventions in piecemeal. There is no limit to the number of modifications for which he may secure patents, provided they amount to separate inventions. But, when he has done so, he subjects to the limitation of the 17-year clause so much of his basic patent as is involved in that combination. The patent thus obtained is a unit. The parts are merged in the whole. This principle is not new. The Circuit Court of Appeals for this circuit use the following language in the case of Victor Talking Machine Co. v. The Fair, 123 Fed. 424. 61 C. C. A. 58:

"Within his domain the patentee is czar. The people must take the invention on the terms he dictates or let it alone for 17 years. * * * Within the field of making, it has never been doubted, so far as we are aware, that he may subdivide as he pleases and offer to sell or leave in the most fanciful parcels on the harshest terms."

To the same effect is Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728.

These cases arise upon contracts made with purchasers or licensees, limiting the use by the purchaser; but I see no reason, on principle, why they should not apply to a division of the possible combination uses to which the patent may be put. I am unable, on principle, to see at this time why the device of patent No. 393,278, together with all of its elements kept in the exact combination of that patent, should not be deemed public property at the date of its expiration. Even were it otherwise, the facts of this case present a question of equitable estoppel which, for the purposes of this hearing, make it the duty of the court to deny the motion for a preliminary injunction. It appears that complainant sold or caused to be sold to defendants a number of electric locomotives, which are inoperative in the absence of the switch here involved. It is also in evidence that defendants have made purchases of similar locomotives of other make, and are using the switch in connection with the latter as well as the former. This would seem to be the ground of complaint. No exception was taken to the use of the switch while complainant's engines only were used. It has been frequently held that any one granting a thing, impliedly grants that also without which the thing expressly granted cannot be used. Pomfret v. Recroft, 1 Saunders, 331; Steam Stone Cutter Co. v. Shortsleeves, Fed. Cas. No. 13,334, 22 Fed. Cas. 1168, and cases cited; Edison Electric Light Co. v. Peninsular Light & Power Co., 101 Fed. 831, 43 C. C. A. 479; Montross v. Mabie (C. C.) 30 Fed. 234. Upon such a state of facts, the court would not be justified in granting such summary relief as now prayed for.

It appears that defendants are solvent and able to respond in damages, and that they have in hand large contracts and business interests, as well as government transactions, which would all be tied up by granting the preliminary injunction, a situation which is not necessary at this time and one not warranted on the facts. The motion for a preliminary injunction is denied.