38 C.C.P.A. (Patents)

## In re MUSKAT et al.
### Patent No. 5734.

United States Court of Customs and Patent Appeals.

Feb. 12, 1951.

Rehearing Denied March 30, 1951.

Edmund H. Parry, Jr., Washington, D. C. (Olen E. Bee and Raymond S. Chisholm, Pittsburgh, Pa., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner, to whom we hereinafter refer as the examiner, of two claims of appellants' application for patent entitled "Novel Esters and Polymers," the rejection being based upon the ground of double patenting.

The application, which bears the serial number 730,204, was filed February 21, 1947. It recites: "This application is a continuation in part of our applications for Letters Patent Serial No. 361,280, filed October 15, 1940, and Serial No. 437,564, filed April 3, 1942."

As passed upon by the examiner, the application embraced twenty-four claims, all of which he rejected. Appellants included all the claims in their appeal to the board, but subsequently withdrew six of them. The board allowed two of those remaining (Nos. 9 and 10) but affirmed the rejection of the other sixteen.

The appeal to this court is limited to the two claims numbered respectively 5 and 20, both of which concededly are generic to claims of patents issued to appellants before the instant application was filed.

Eight patents were cited as references as follows:

| | | | |
|---|---|---|---|
| Muskat et al. | 2,370,565, | Feb. 27, 1945, |
| Muskat et al. | 2,384,115, | Sept. 4, 1945, |
| Muskat et al. | 2,384,123, | Sept. 4, 1945, |
| Muskat et al. | 2,384,125, | Sept. 4, 1945, |
| Muskat et al. | 2,385,932, | Oct. 2, 1945, |
| Muskat et al. | 2,385,933, | Oct. 2, 1945, |
| Muskat et al. | 2,385,934, | Oct. 2, 1945, |
| Muskat et al. | 2,403,113, | July 2, 1946. |

The examiner did not discuss claims 5 and 20 apart from a group, nor did the Board of Appeals do so until rendering a decision upon a petition for reconsidera-

tion. The only reference patent actually discussed by either tribunal of the Patent Office was No. 2,384,123, issued September 4, 1945, upon an application, serial No. 433,829, filed March 7, 1942, but the examiner expressly rejected all the claims "as unpatentable over the claims of *any one* of the Muskat et al. patents" cited as a reference. (Italics supplied.)

Upon the record the issue presented to the court is one of law only. There is no material controversy about the facts and no study of the chemistry of the case seems to be required.

The brief for appellants asserts: "The issue presented here involves the propriety of the rejection of claims 5 and 20 upon appellants' species patents."

In the brief for appellants there is listed a summary of chemical products said to be included in the several species patents but which, it is said, have received no generic protection. Also there are listed many polymers stated not to have been included in any patent for species, which, according to the brief, "will be open to the public if claims here on appeal are not eventually allowed."

A further statement in the brief for appellants reads:

"In order to completely understand the problem, it is necessary to review the pertinent rules of the Patent Office and to explain the dilemma with which an inventor having made a generic invention with many species inventions is confronted. Rule 41 [see new rules 141–6–7] of the Patent Office Rules of Practice [35 U.S.C.A. Appendix] under which the present application was filed provides that two or more independent inventions cannot be claimed in one application. The Rule further provides that where several distinct inventions are dependant upon each other and mutually contribute to produce a single result, they may be claimed in one application provided that not more than three species of the generic invention may be claimed. Thus, where, as here, the inventor has made a generic invention together with more than three patentably distinct species,

he may file one generic application containing three species of his invention and if further coverage becomes necessary, he must file individual applications covering each of the species or classes of species which he considers patentably distinct.

"Almost invariably, he finds that the species applications become allowable at a date much earlier than the generic application. No method is available to him for delaying the issuance of the species applications. Consequently, if he is to obtain a generic claim to his invention, it is almost inevitable that this generic claim must issue in a patent at a date later than the date upon which the species applications mature into patents."

The brief for appellants designates application, serial No. 361,280, filed October 15, 1940, as the "first parent" case and, upon the basis of the record states that in that application, as filed, "Generic claims were presented to esters and polymerized esters of polybasic acids * * * and specific claims were presented to esters of maleic acid * * *."

The brief states that serial No. 437,564, filed April 3, 1942, as a continuation in part of serial No. 361,280, contained the generic claims that were embraced in serial No. 361,280 and some species claims different from species claims which were involved in applications that ripened into patents before the instant application was filed.

Appellants have numerous patents for species assigned, as in the instant application, to a common assignee.

Eight of such patents are those listed as references, supra.

Appellants claim that both serial No. 361,280, as filed, and No. 437,564 afforded support for the claims in the instant case; that both were copending with the instant application and that both "have now been abandoned"; that the instant application is a continuation of them; and that it is entitled to the benefit of their filing dates.

It also is urged on behalf of appellants, that they have consistently sought generic claims, dominating the claims here on appeal, since their first application, serial No.

361,280, was filed; that the rules governing Patent Office procedure precluded the presentation of appealed claims 5 and 20 in either serial No. 361,280 or serial No. 437,-564; that, since those applications have been abandoned, the present application should be treated as the first and parent application; that appellants have established that the here allowed species claims, 9 and 10, cover subject matter, including the polyvinyl alcohol species, which is patentably distinct from the species covered by their patents; that "The law permits an applicant for Letters Patent to obtain a generic claim notwithstanding the issuance of a species patent, in any application containing a species claim which is patentably distinct from the already patented species (thereby establishing that the inventions are patentably distinct) and where, as here, dedication of the right to the genus cannot be presumed from the issuance of the species patent." and finally, that the allowance of generic claims 5 and 20 would not extend the monopoly of the species patents.

It is of record that serial No. 361,280 was abandoned on January 3, 1949, and serial No. 437,564 on April 17, 1948. At the time of the decisions of the board in the latter part of 1948, serial No. 361,280 seems to have been pending on appeal, taken under R.S. § 4915, 35 U.S.C.A. § 63, in a United States District Court. Serial No. 437,564 seems to have been abandoned without appeal after the board had affirmed the examiner's rejection of it.

It is asserted on appellants' behalf that the courts have consistently recognized that an inventor may be entitled to allowance of a generic claim in a later patent, notwithstanding the fact that a species patent which is dominated by the generic claim may have issued earlier, when the patentee is able to establish a patentable distinction between the earlier species patent and the later generic patent. In support of this contention, the brief cites the cases of Suffolk Company v. Hayden, 3 Wall. 315, 70 U.S. 315, 18 L.Ed. 76; Badische Anilin & Soda Fabrik v. A. Klipstein & Co., et al., C.C., 125 F. 543; Vapor Car Heating Co., Inc., et al. v. Gold Car Heating & Lighting Co., D.C., 296 F. 188; and an expression of this court in the case of In re Asseff, 173 F. 2d 253, 36 C.C.P.A., Patents, 867.

It is argued that the application involved here was copending with serial No. 361,280 (the so-called "parent case") and No. 437,-564, but in its second decision, rendered after a reconsideration of its first, the board declared:

"With regard to the first filed application, Serial No. 361,280, above mentioned, we find as follows:

"The specification of that application may be said to include a general disclosure of the subject matter of claims 5 and 20 under consideration. It appears further that as of the date of the filing of the present application, application Serial No. 361,-280 contained no claims the subject matter of which might be said to be inclusive of claims 5 and 20 under consideration in this application, namely, the carbonic esters. In the earlier application the broadest claim defined the acid in a manner to exclude carbonic acid, while the more specific claims were drawn to 'allyl maleate' or a derivative thereof. We are therefore of the opinion that appellants were not claiming in their earlier application the invention of the appealed claims in this case. The claims here on appeal cover broadly a class of carbonic esters, while each of the granted patents claimed a specific carbonic ester falling within that class so that the claims here on appeal dominate the claims of the granted patents, which is conceded. In so far as any reliance upon the earlier filed application, Serial No. 361,280, is concerned, it is our conclusion that double patenting would arise if claims 5 and 20 were allowed in this case.

"With regard to application, Serial No. 437,564, to which our attention is called as having support for claims 5 and 20 it appears that, as in the earlier application discussed above, the specification in application, Serial No. 437,564, does afford a broad general basis for appealed claims 5 and 20. With regard to the claims in this earlier filed application, we find that they cover broadly esters of poly or, more specifically,

dibasic acids which may include the class of esters here claimed as well as esters of the other dibasic acids disclosed. The claims in Serial No. 437,564 were held unpatentable by the Board of Appeals and the application was later abandoned. It is not seen how appellants can successfully contend that they were claiming the invention represented by the class of carbonic esters in this prior copending application at the time the present application was filed any more than it can be said that they were at that time claiming any of the other specific polybasic esters disclosed. In fact the claims in this prior filed application were so broad as to define no invention patentable to appellants and to state that the invention defined in the instant application is the same invention claimed in the earlier application would be to say that claims which fail to define an invention are the equivalent of claims to a patentable invention. We do not see how broad, dominating, but unpatentable claims in an earlier application form the basis of an intent to claim specific subject matter claimed in a later case which patentably distinguishes from the prior art any more than broad, general language in the specification of a prior application may be relied upon to support material, specific limitations in claims asserted in a later case. Claims in the earlier application should be sufficiently definite in scope as to clearly define the invention claimed in the later application and not be so inordinately broad as to cover classes of esters which embrace compounds outside the invention of the appellants. The earlier applications of the appellants do not contain claims to the carbonic esters and therefore can afford no basis for such claims prior to the filing of the present application."

It is pointed out in the brief of the Solicitor for the Patent Office that the eight applications which matured into patents in 1945 and 1946 were filed in the Patent Office while serial No. 361,280 and serial No. 437,564 were pending and that none of the eight patents cited as references at any time contained *claims* similar to the claims on appeal, but that one of the patents; viz., 2,385,932, has a *disclosure* which would clearly support the appealed claims, and, the brief adds, "no reason appears as to why claims of similar scope were not presented in that application."

It is pointed out further that the application here involved, filed on February 21, 1947, more than one year subsequent to the granting of all but one of the cited patents—i. e., 2,403,113, granted July 2, 1946—although copending with serial Nos. 361,280 and 437,564, was never copending with any of the cited patent applications, and the following is asserted: "Considering the situation as between the presently involved application and the disclosures of the cited patents, and particularly patent No. 2,385,-932 which contains a disclosure of the same breadth and scope, and laying aside for the moment the effect, if any, of the earlier filed applications, i. e., Serial No. 361,280 and 437,564, it is submitted that the broad subject matter defined in the appealed claims was dedicated to the public on the day of grant of such patent, by virtue of the fact that the instant application was not copending with that patent. The Courts have been fairly consistent in denying validity to a claim if directed to subject matter disclosed in an earlier patent to the same inventor and hiatus in prosecution has occurred. Miller v. Bridgeport Brass Co., 104 U.S. 350, 26 L.Ed. 783; Palmer Pneumatic Tire Co. v. Lozier, 6 Cir., 90 F. 732; Houser v. Starr, 6 Cir., 203 F. 264; Ball & Roller Bearing Co. v. F. C. Sanford Mfg. Co., 2 Cir., 297 F. 163; Wolf, Sayer & Heller v. Patent Casing Co., 7 Cir., 4 F. 2d 57; Kodel Elect. & Mfg. Co. v. Warren, 62 F.2d 692. And this rule is definitely well established where, as here, the hiatus in prosecution is greater than the statutory period. In re Griffith, 39 App.D.C. 456; Conrader et al. v. Judson Governor Co., 2 Cir., 238 F. 349."

The solicitor contends, in substance, that in order that the presence of a copending application may rebut the inference of dedication, the claims which are being considered must have been made in the copending application before the patent which raises such inference is issued, citing Jones v. Larter, 1900 C.D. 111; Vapor Car Heating Co., Inc. et al. v. Gold Car Heating &

Lighting Co., supra; Union Typewriter Co. v. L. C. Smith & Bros., C.C., 173 F. 288, Id., 3 Cir., 181 F. 966; Otis Elevator Co. v. Portland Co., 1 Cir., 127 F. 557; that in the instant case claims of the scope of claims 5 and 20 were not contained in either serial No. 361,280 or serial No. 437,564; that only broader and unpatentable claims were presented in those cases; and it is argued: "* * * The fact that broader unpatentable claims were being sought in those cases cannot avail appellants to save them from the attachment of the rule of dedication, particularly in view of the fact that patent 2,385,932 containing a disclosure of the same scope as that of the presently involved application had been published some sixteen months prior to appellants' first presentation of claims of the breadth now sought. Although appellants appear to offer as an excuse the fact that Rule 41 [see new rules 141–6–7] of the Rules of Practice of the Patent Office precluded appellants from presenting these claims in the earlier applications Serial Nos. 361,280 or 437,564 * * * it is to be noted that no explanation appears for appellants' failure to present claims of the scope of the appealed claims in the species patents until long after such patents had been published."

The cases of In re Carrier, 55 App.D.C. 400, 4 F.2d 1013; Union Typewriter Co. v. Smith, supra; and Smith v. Kingsland, 85 U.S.App.D.C. 284, 178 F.2d 26 are cited as showing "that such long delay is fatal."

Referring to the contention on behalf of appellants to the effect that since species claims 9 and 10 have been considered allowable by the Board of Appeals the generic claims 5 and 20 are properly presentable and issuable in the instant application, and the cases cited in support thereof, the Solicitor for the Patent Office submits "that in none of the cases relied upon does it appear that the broad subject matter sought in the later filed case had been published more than the statutory period, * * *" and it is pointed out, in effect, that the subject matter of the instant case had been published by the issuance of several of the patents about sixteen months prior to the filing of the here involved application. In this connection, the Carrier case, supra, and the Smith v. Kingsland case, supra, are cited again, the Carrier case being emphasized particularly because, it is said, the facts and arguments in that case were substantially the same as those presented in the instant case.

In the brief for appellants before us an argument is presented which, so far as we can determine from the record, was not presented before the tribunals of the Patent Office—at least, if it was presented, it was not referred to in their decisions. It is to the effect that there will be no extension of the monopoly if a patent of the claims at issue should be granted now. The authorities cited in support of the contention are: Thomson-Houston Electric Co. v. Illinois Telephone Const. Co., C.C., 143 F. 534, decided February 26, 1906, and Automatic Paper Machinery Co., Inc., v. Marcalus Mfg. Co., Inc., et al., 3 Cir., 147 F.2d 608.

The decision of the Circuit Court of Appeals for the Third Circuit of the latter case was affirmed by the Supreme Court November 13, 1945, in a case styled Scott Paper Co. v. Marcalus Manufacturing Co., Inc., et al., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47.

Both cases so cited were infringement proceedings. It is not deemed necessary to rehearse the facts appearing in them in detail. It is pointed out in the brief of the Solicitor for the Patent Office that the first related to combination and sub-combination claims and the second to the use by the party charged with infringing a "Chinese copy of that covered in an expired patent."

As stated in the first headnote of the Thomson-Houston Electric Co. v. Illinois Telephone Const. Co. case, supra, the court held that "On the expiration of a patent for a *combination,* the use of such combination becomes free to the public, notwithstanding the fact that it contains as *one of its elements* a device covered by another patent to the same patentee which has not expired." (Italics supplied.)

In the second case the second headnote of the Supreme Court decision reads: "An assignor of a patent is not estopped by vir-

tue of his assignment to defend a suit for infringement of the assigned patent on the ground that the alleged infringing device is that of a prior-art expired patent."

It does not seem to us that those cases bear sufficient analogy to the instant case to justify regarding them as controlling precedents.

Our primary concern, in cases such as this, is not what might happen in an infringement proceeding if the appealed claims should be allowed, but with the fundamental question of whether their allowance is proper.

It is the manifest duty of the tribunals of the Patent Office to guard against double patenting. As stated in the brief for appellants, the principle enunciated in the leading case of Miller v. Eagle Manufacturing Company, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121, that an inventor should not receive two patents for but one invention is fundamental, and the prevention of it primarily rests with the Patent Office. When the Patent Office denies an application on the ground of double patenting, the applicant is given a right of review in either this court or in other United States Courts under R.S. § 4915. The courts in reviewing such cases, of course, have a responsibility in the matter similar to that of the tribunals of the Patent Office.

We hereinbefore have stated, in substance, that appellants in giving, in the early part of their brief, the list of products covered by their species patents, which they referred to as "restricted patent protection," said they had *"received no generic protection."* (Italics quoted.) But for their subsequent argument to the effect that the granting of the claims on appeal would not extend the monopoly, we should have concluded that they anticipated receiving some additional protection for their patented *species* claims from the allowance of generic claims.

We regard the decision in the case of Morse Chain Co. v. Link Belt Machinery

Company, 7 Cir., 164 F. 331, 333, decided April 14, 1908, cited in the brief of the Solicitor for the Patent Office, as being directly in point here. There the Circuit Court of Appeals for the Seventh Circuit, after a recitation of the facts, said: " * * * This is not a case [it involved alleged improvements in chain driving gear and driver chains] in which a patentee, having first made application for a patent for a generic invention, has subsequently applied for patents for specific improvements. This is a case in which a patentee, possessed of an alleged generic idea, elected to first apply for a patent for a specific embodiment embracing the essential feature of the generic idea, 'the extended bearing,' and later specifying such essential feature in another specific embodiment, claims that the generic idea growing out of such essential feature, belongs to the later, and not to the earlier, patent. To allow this, it seems to us would be to make the second patent overlap the first, a result that involves the patentee in this dilemma, either that his second patent is not generic in the respect named, or that it is a double patenting."

The examiner in his statement following the appeal to the board said of the claims of the reference patents that they overlap "and are subgeneric to the broadest claims of the instant application," and in the brief of the Solicitor for the Patent Office it is argued that the subgeneric claims of patents Nos. 2,384,123 and 2,385,932 provide appellants with substantially the same coverage as would be provided by the instant claims. If this be correct, appellants, of course, have no need of the patent here applied for, but we do not feel called upon to pass upon the question of its correctness.

Upon the facts existing and law as expressed in the cases believed to be most directly in point, as well as upon what we deem to be sound reasoning, the decision of the Board of Appeals is affirmed.

Affirmed.