36 C.C.P.A.(Patents)

## Application of ASSEFF.
### Patent Appeal No. 5521.

United States Court of Customs
and Patent Appeals.
March 1, 1949.

254

Oberlin & Limbach, of Cleveland, Ohio (Oscar C. Limbach, of Cleveland, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims numbered 1, 2, 3, 4, 6, 14, 15, 16, and 21 of appellant's application for patent broadly entitled "Lubricating Composition." No claim was allowed.

The application, which was filed October 25, 1941, recites that it "is a continuation in part of my copending application serial No. 404,361, filed July 28, 1941," and it appears that that application matured into patent 2,261,047 (one of the references cited here) issued October 28, 1941—three days after the instant application was filed.

The subject matter of the claims which are involved is stated in the brief for appellant to be a "lubricating composition which contains a major amount of a hydrocarbon oil such as a mineral lubricating oil and a minor amount of a material which we shall refer to for convenience hereinafter as the *addition agent*." (Italics quoted.) The brief of the Solicitor for the Patent Office concurs with that statement and adds, "The addition agent may be a stable oil-soluble compound which contains an organic radical derived from a cyclic alcohol and at least three other elements which are identified in claim 21 as being either zinc or cadmium, arsenic or phosphorus and sulphur or selenium."

Claims 1 to 4, inclusive, and 21 are generic. We here quote claims 1 and 21, the latter seemingly being the broadest of the several claims, as is stated in the brief for appellant:

"1. A lubricating composition comprising a major amount of a hydrocarbon oil and a minor amount of a compound produced by preparing the zinc salt of an acidic reaction product obtained by reacting a compound of the class consisting of the sulphides and selenides of phosphorus with a cycloaliphatic alcohol.

"21. A lubricating composition comprising a major amount of a hydrocarbon oil and a minor amount of a stable oil-soluble compound which contains:

"(a) an organic radicle derived from a cyclic alcohol;

"(b) an element of the class consisting of zinc and cadmium;

"(c) an element of the class consisting of arsenic and phosphorus; and

"(d) an element of the class consisting of sulphur and selenium."

By reference, claims 2, 3, and 4 are made dependent on claim 1. Claim 2 recites that the alcohol named in claim 1 "is an alkylated cycloaliphatic alcohol;" claim 3 that "the alcohol contains the cyclohexane nucleus;" and claim 4 that "the alcohol is an alkylated cyclohexanol."

Claim 6 is illustrative of the species group of claims. It reads: "6. A lubricating composition comprising a major amount of a hydrocarbon oil and a minor amount of the zinc salt of an acidic reaction product obtained by reacting phosphorus trisulphide with a cycloaliphatic alcohol."

Claim 14 names "an alkylated cyclohexanol" instead of "a cycloaliphatic alcohol" named in claim 6 and recites that substantially all of the alkyl groups in such cyclohexanol "have less than six carbon atoms." Claim 15 recites "less than four carbon atoms." Claim 16 defines reacting the phosphorus trisulphide "with a methylcyclohexanol."

All of the claims before us were rejected below as lacking invention over cited art, and claim 21 was additionally rejected upon the ground of indefiniteness.

In addition to appellant's patent 2,261,047, hereinbefore referred to, there were cited two other patents; viz., Sullivan, 2,174,019, September 26, 1939; Prutton, 2,242,260, May 20, 1941.

Of the Sullivan patent, which is for a lubricant, the board said: "Sullivan has been cited to illustrate close relationship between sulphur and selenium. On page 2, column 1, lines 47–48, triphenyl phosphine sulphide and triphenyl phosphine selenide are listed as alternatives for use in a formula, and in the examples there listed they are alternatives, along with oxygen, as corrosion inhibitors."

Attention may be directed at this point to the recital in claim 1, supra, to the effect that sulphides and selenides are named as ingredients of the compound to be reacted with cycloaliphatic alcohol for producing the acidic reaction product used in preparing the minor element of zinc salt. By this, and from the specification, we understand appellant to teach, as the patent to Sullivan teaches, that sulphur and selenium are equivalents as used in the art of producing lubricants. We note that appellant's specification recites: "In the past, it has not been found possible to compound addition agents which would reduce corrosive tendencies, and the tendency to produce acidic materials during oxidation, without increasing the tendency to form deleterious deposits. By the use of the addition agents of this invention, however, the corrosive tendency and the formation of acidic materials are reduced while, at the same time, reducing the tendency to form harmful deposits."

The Prutton patent is also for a lubricating composition one of the elements of which is an agent added to mineral lubricating oil. The addition agent in the patent specification is stated to be "of the type produced by reacting an organic composition with certain reagents which contain either separately in combined or elemental form, or in combination, phosphorus and sulphur. The addition agent thus produced may, in most cases, be described as an organic composition containing both the elements, phosphorus and sulphur." Several kinds of alcohol are named as specific examples of oxygen-bearing compounds, which compounds, as we understand it, constitute the base composition of the addition agent. There also are listed numerous reagents among which, under the heading "C. Phosphorus and sulphur compounds," are found "Phosphorus trisulphide—$P_4S_6$ (or $P_2S_3$)" and "Phosphorus pentasulphide—$P_2S_5$ (or $P_4S_{10}$)." Under the heading "D. Reagents containing elements equivalent to phosphorus and/or sulphur 1. Compounds of phosphorus and equivalents of sulphur, e. g. Se, for example" are found "$P_2Se_3$" and "$P_2Se_5$."

So, in the Prutton specification we find the specific teaching of the use of both phosphorus trisulphide and phosphorus pentasulphide. Also we find there the teaching of the equivalency of sulphur and selenium, as used in the art under consideration.

It is noted that the terms "phosphorus trisulphide" and "phosphorus selenium" are not used in the claims of the Prutton patent, nor are the formulae used, but it is supposed that the chemical terms which are used cover them. In any event, the teaching of the specification is a part of the prior art independent of the claims.

Appellant's patent does not contain claims as broad as appealed claims 1, 2, 3, 4, and 21; and claims 6, 14, 15, and 16 differ as to species from the patent claims.

In each of the patent claims (except number 6 which has no bearing upon the issues here involved) "phosphorus pentasulphide" is designated as the element with which other elements are reacted to produce the zinc product named in the claims, while in appealed claims 6, 14, 15, and 16 here involved "phosphorus trisulphide" is so designated. Another difference is that in the patent only sulphur, or sulphide of phosphorus, is named; while claims 1, 2, 3, 4, and 21 name selenium, or selenides. Still another difference found as to claim 21 is that it names zinc and cadmium, while the patent names only zinc. Cadmium is not named in any of the other claims.

The brief on behalf of appellant declares that there are only three points of law which require our consideration and states them as follows:

"(a) Are the present claims properly rejected as unpatentable over Asseff's prior patent on the ground of double patenting;

"(b) May Asseff's prior patent be combined with the Prutton and Sullivan patents in spelling out an anticipation of any of the claims on appeal; and

"(c) Is claim 21 definite and in compliance with R.S.4888 [35 U.S.C.A. § 33]?"

It seems to us most logical to consider the second point first, taking up first the generic claims.

Specifically those claims (1, 2, 3, 4, and 21) were rejected (the latter primarily) on applicant's patent because the broadening of the claims of that patent to include selenides as well as sulphides was regarded as obvious to those skilled in the art and as disclosing nothing patentable over the patent in the light of the teaching of the equivalency of sulphur and selenium as taught by either Sullivan or Prutton.

■ It is pointed out by the Solicitor for the Patent Office that this court long ago in the case of In re Slepian, 49 F.2d 835, 18 C.C.P.A. Patents, 1393, (wherein we cited authorities, including the decision in the case of In re Isherwood, 46 App.D.C. 507, 1917 C.D. 226, cited by the Primary Examiner in the instant case) held that an applicant is not entitled to claims for a second form of his invention unless such

claims involve an inventive difference over the claims embraced in his patent for the first form.

■ In the case of In re Barge, 96 F.2d 314, 317, 25 C.C.P.A., Patents, 1058, we held it to be settled law that in cases such as this "it is proper to hold the claims of a later filed application unpatentable *in view of the prior art and of the claims of the applicant's issued patent."* (Italics new here.)

We there cited In re Isherwood, supra; In re Swan, 46 F.2d 572, 18 C.C.P.A., Patents, 935, and In re Slepian, supra.

There is, in our opinion, a strong analogy between the instant case and that of In re Lincoln et al., 143 F.2d 965, 966, 31 C.C.P.A., Patents, 1222. In that case the application taught the use of a relatively pure olefin treated with a sulphur compound as an addition agent for a lubricant, certain of the claims specifically naming particular sulphur compounds. All the claims were rejected by the tribunals of the Patent Office upon a prior patent to the applicants in view of the disclosures in patents to others. In affirming the decision of the board, we said, inter alia: " * * * the use of sulphur compounds was clearly suggested by the prior art cited and relied upon, and it would not be inventive over what appellants already had been granted in the way of a patent to add to their process of making the lubricants, a material which was old in the art and which, after all, supplied the sulphur need, the importance of which was taught in appellants' patent."

It was urged, in substance, on behalf of appellant before the tribunals of the Patent Office, and it is urged before us, that at the time appellant filed his application which eventuated in his patent his experiments and tests had not extended beyond the use of sulphur, or sulphides, and so he was not then in position to allege and claim selenium, or selenides, and it is insisted (numerous decisions being cited and discussed) that appellant is entitled now to receive the protection afforded by generic claims. Of this the examiner said: "Assuming that at the time the parent application was filed applicant had explored only the sulfur compounds and that subsequent

investigation, upon which the present application is seemingly based, included the selenium compounds, it is strange that none of the test data secured in connection with the latter type of compounds was incorporated in the present specification. The test data appearing in Tables A to E, pages 12 to 16 is all based on results obtained with the zinc salt of the reaction product of alkylated cyclohexanols with $P_2S_5$, to which subject matter the claims of applicant's patent are directed. The expansion of the patent disclosure to include selenium derivatives is regarded as an obvious one such as would be apparent to one skilled in the art and fails to represent a patentable advance. See In re Wietzel et al., 39 F.2d 669, 17 C.C.P.A., Patents, 1079, 1930 C.D. 937, 400 O.G. 463."

Pertinent also is the following comment of the Board of Appeals:

"Appellant relies upon a number of decisions in support of the proposition that where a species or improvement patent is granted, it is proper to allow in a copending case generic claims covering the patented invention, citing, among others, the Lippert decision, [Ex parte Lippert] 40 U.S. P.Q. 579, [a decision rendered January 25, 1939, by Examiners in Chief of the Patent Office] wherein a patent was granted on a species of the invention and generic claims were sought in a copending application directed to a different species. The Board of Appeals held that in a case of this kind involving two species, the generic claims may appear in either application in the event they are inserted in the application last to issue before the issuance of the first case. The Examiner cites Appeal No. 3,056, Vol. 28 J.P.O.S., page 452, June 1946, [not elsewhere reported] which differentiates from the facts in Ex parte Lippert by pointing out the fact that in the Lippert decision the patent was for an improvement over the subject matter of the generic case under consideration, whereas in the set of facts presented in Appeal No. 3,056 the instant application was admitted to be a continuation in part of the patent for the improvement. Reference was made to Ex parte Lilienfeld, 22 J.P.O.S. 307–308, wherein a Markush claim excluded from its membership compounds covered in applicant's earlier patents, such Markush claim being held proper so long as no included member was found in prior art. Accordingly, it was held in Appeal No. 3,056 that in a case of this type, involving an amplified chemical disclosure embodied in a later filed copending application, asserting claims which include earlier patented species, and where it is possible to claim a new species or a Markush group limited to exclude the patent species, it is not permissible to allow in the later filed case a claim which would extend the monopoly of the patented species.

"We find that this application is a continuation in part of appellant's copending patent No. 2,261,047 and that the situation here closely corresponds to that presented in Appeal No. 3,056. We are of the opinion that the same principle governs and that generic claims 1 to 4 and 21 were properly rejected as being unpatentable over the claims of patent 2,261,047."

With respect to the presence of cadmium in claim 21, a matter not referred to by the board, the examiner, in a letter of June 11, 1945, responding to an affidavit of appellant filed after the appeal to the board had been taken, said: " * * * Applicant points out that the present application discloses both zinc and cadmium salts whereas the parent application is limited to zinc salts. However, only claim 21 is generic to both zinc and cadmium salts and no evidence is of record that cadmium salts produce a result different in kind from that obtained with the zinc salts. The fact that applicant prepared the cadmium salts prior to the filing of the present application in accordance with the procedure related in Example A is immaterial. The affidavit states that the cadmium salt was soluble in mineral oil but no test data is given."

In rejecting claims 6, 14, 15, and 16 which cover a species wherein only phosphorus trisulphide ($P_2S_3$) was named as the reacting sulphur compound, the examiner expressed the opinion that it had not been shown "that $P_2S_3$ produces a result patentably distinct from that obtained with $P_2S_5$." Also he rejected them upon the disclosure of the Prutton patent hereinbefore detailed.

The board approved the rejection, saying as to the first ground stated: "Appellant presented an affidavit tending to show improved results with the use of the reagent containing the trisulphide over that obtainable with a reagent containing the pentasulphide, in that it was effective in forming a positive film for protection of the bearing. However, this evidence was discounted by the Examiner on the ground that the comparison was based upon the use of acidic reaction products rather than upon the zinc salts of such products, which is the subject matter of the claims."

We are not convinced that there was any error as to the ground so discussed, but elaboration of it is deemed unnecessary in view of what we regard as a proper rejection upon the disclosure of the Prutton patent.

Appellant's second question of law quoted, supra, is answered in the affirmative.

Turning to question (a), supra, which inquires whether the appealed claims are properly rejectable over Asseff's prior patent on the ground of double patenting, it seems proper to say, first, that it is not clear to us that the rejection below was based solely upon double patenting, although there is one paragraph in the decision of the board which indicates that it may have deemed the generic group (1 to 4 and 21) to have been properly rejected by the examiner as being unpatentable over the claims of appellant's patent alone. As to both groups of the appealed claims, however, the examiner's rejection is based upon appellant's patent in view of other cited art—the Sullivan and Prutton patents in the case of claims 1, 2, 3, 4, and 21 and the Prutton patent only in the case of claims 6, 14, 15, and 16. As we view the case, it was unnecessary to its decision to pass specifically upon the question of double patenting, because it is clear to us that, under the authorities hereinbefore cited, none of the appealed claims is patentable over appellant's own patent in view of the prior art relied upon.

For the reasons stated by the examiner hereinabove recited it is not thought that the inclusion of cadmium in claim 21 adds anything to the patentability of that claim. In view of our conclusion upon the basis of questions so far discussed, it is unnecessary to pass upon the examiner's rejection of that claim on the ground of indefiniteness.

An interesting portion of the brief filed on behalf of appellant relates to the right of an applicant who has received a patent for certain species claims to obtain a second patent containing generic claims and claims for another species upon a copending application. Numerous authorities are cited and discussed, among them being the decision by Judge Learned Hand in the well-known case of Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259, in which there are citations of many decisions including that in the case of Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 80 F. 712, (which is often referred to in the patent practice) the opinion being by Judge Wm. H. Taft (later Chief Justice) while he was a United States Judge of the Circuit Court of Appeals for the Sixth Circuit.

In both these cases the courts followed the decision of the Supreme Court in the case of Miller v. Eagle Manufacturing Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121, wherein it was held, in effect, that where two applications of a party are copending it is a matter of indifference which of the patents issued first, provided that the claims are for separate inventions. One of the headnotes of the Miller case, supra, reads: "A second patent may be granted to an inventor for an improvement on the invention protected by the first, *but this can be done only when the new invention is distinct from, and independent of, the former one.*" (Italics supplied.)

If the generic claims here on appeal presented matter patentable over the patent claims of appellant when viewed in connection with the other patents cited as references, the fact that they are embraced in a second application, which is a continuation in part of the first application, would not militate against their allowance, the respective applications having been copending, but unhappily for appellant we are unable to agree that such patentability exists.

Also, if the species claims here involved presented matter patentable over the species claims of appellant's patent in view of the Prutton patent, they might be allowable, but here again we are not convinced that such situation exists.

For the reasons indicated the decision of the Board of Appeals is affirmed.

Affirmed.