**Application of STANLEY et al.**

**Patent Appeal No. 6010.**

United States Court of Customs
and Patent Appeals.

June 24, 1954.

Worley, J., dissented.

Howson & Howson, Philadelphia, Pa.
(Dexter N. Shaw, Philadelphia, Pa., Carl
A. Castellan and William A. Smith, Jr.,
Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (S.
W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and
O'CONNELL, JOHNSON, WORLEY
and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision
of the Board of Appeals of the United
States Patent Office, affirming the Primary Examiner in his rejection of claims
7, 8, 11–14, 38–41, and 46 of appellants'
application, Serial No. 504,664, for new
and useful improvements in "Methods
and Apparatus for the Fluid Treatment
of Filamentary Materials." All of the
rejected claims are method claims. Apparatus claims 47–56 have been allowed.

Claims 7 and 14 were considered representative by the board and are so considered by us. They are as follows:

"7. The method of treating filamentary material with a liquid comprising the steps of passing the
material through a generally helical
path at sufficiently high velocity to
throw the liquid therefrom by centrifugal force, delivering the liquid
to the material as it passes through
the helical path, and deflecting the
liquid thrown from the filamentary
material back to the helix.

"14. The method of treating filamentary material with a liquid comprising the steps of passing the material upwardly through a generally
helical path having an approximately
vertical axis at sufficiently high
velocity to throw the liquid therefrom by centrifugal force, delivering
the liquid to the material as it
passes through the helical path adjacent the upper end of the path,

deflecting the liquid thrown from the material back to the helix so that the liquid continually plays upon a zone of the helix and moves under the influence of gravity generally downwardly through that zone toward the material entrance end of the path, and withdrawing the liquid from the zone adjacent its lower end."

The references relied on are: Walters 2,145,281 Jan 31, 1939; Truitt 2,513,381 July 4, 1950.

The invention, as defined by the claims on appeal, relates to a method of treating filamentary material with a liquid by passing the material through a helical path, introducing a liquid to the material while the material is revolving at a sufficiently high velocity to throw the liquid off the material by centrifugal force and deflecting the thrown liquid back onto the material. In this manner the material is said to be subjected to a more thorough contact with the liquid.

The patent to Walters relates to reels of the thread-storage, thread-advancing type in which thread is wound upon the reel in a series of spaced helical turns. Walters discloses a reel mounted on a hollow spindle to rotate therewith. A current of hot air, a gas, or a suitable liquid can be introduced to the thread through the hollow spindle. Alternatively, a gas or liquid can be introduced to the surface of the thread, drawn through the thread into the reel and carried away through the hollow spindle.

The patent to Truitt discloses an improvement in a method for liquid treatment of filamentary materials. This method requires that the material be passed through a helical path, with each convolution in contact with adjacent convolutions, that the liquid be introduced into the space within the helix, that the liquid be forced out of the helix by centrifugal force and that the thrown liquid be confined to a region adjacent the helix. For convenience claim 4 of the Truitt patent, which is representative of the claims therein, is set out.

"4. The method of treating filamentary material with liquid comprising continuously passing the material through a generally helical path with each convolution thereof making contact with adjacent convolutions, introducing a liquid into the space surrounded by the helix, rotating the liquid within the helix at sufficient speed to force it outwardly through the helix by centrifugal force, distributing the liquid throughout the entire circumference of a predetermined band or zone of the helix, and causing the liquid flowing outwardly of the helix to continually play thereupon."

All of appellants' appealed claims were rejected on the claims of the Truitt patent. This rejection was based on the theory of double patenting, since both Truitt and appellants have assigned their inventions to the same party, the American Viscose Corporation. In order to clearly understand the circumstances of this appeal we will briefly review the history of the prosecution before the Patent Office.

Appellants filed their application on October 2, 1943. It appears from the record that appealed claims 7, 8, and 11–14 were among the original claims filed with the application. The application was duly prosecuted and on November 18, 1949 in a letter by the examiner, all of the appealed claims were indicated as allowed. However, they were held "subject to rejection as unpatentable over the issue of the interference between this application and the Ewing patent No. 2,481,916 dated Sept. 13, 1949, in the event of an award of priority adverse to applicant." This letter of the examiner was termed as a final action on the *ex parte* prosecution of the application.

During the prosecution of the instant application, and on December 6, 1945, an application was filed by Truitt for a patent on "Method For Treatment Of Filaments." While the above interference was pending the Truitt application was allowed and issued on July 4, 1950 as

patent No. 2,513,381, assigned to the American Viscose Corporation.

The decision on the interference was apparently adverse to appellants for on April 2, 1951 they filed an amendment to their application canceling, among others, the claims that formed the counts of the interference. After what appears to have been an exchange of letters the examiner gave his final action in a letter dated June 27, 1951, finally rejecting all of the appealed claims.

This rejection was based on the claims of the Truitt patent, the examiner stating that the patent claims differed only in scope from the broad, generic claims of the application. The Walters patent was cited to show that the mode of applying the fluid to the thread was "an immaterial variation by virtue of being conventional." The examiner also held that the spacing of the thread in the Truitt patent was conventional, or at least that it represented an uninventive expedient by virtue of the fact that threads are conventionally spaced close together. A number of cases on double patenting were cited by the examiner, both in the final rejection and in the examiner's statement, as a basis for the rejection on double patenting. On appeal the Board of Appeals affirmed the rejection of the examiner without reference to the Walters patent However, on a request for reconsideration filed by appellants, the board affirmed their first decision, relying on the Walters' disclosure to show that the appellants' form of the device was not patentably distinct from the Truitt patent.

On their appeal to this court appellants state that the question presented is one of law. This question, according to appellants, is: "are not generic claims allowable in this application over claims directed to a specific invention granted in a patent to a different inventor but owned by the common assignee under the circumstances of this case: * * *?" Appellants stress the fact that they are the inventor of the generic invention and therefore, it could not have been claimed in the Truitt patent, which was the first

to issue. They also point out that Truitt was the inventor of the specific "improvement" which he claimed in his patent, and that the improvement could not have been claimed in their application because there was no disclosure of that invention, as well as the fact that they were not the inventors of it. Many cases are cited by appellants to sustain their view that the claims are allowable. Some of these cases are decisions by the Board of Appeals of the United States Patent Office which seem to be decided on a fact situation very similar to the one before us, but reaching the opposite result.

The Patent Office relies on the alleged fact, found by both the examiner and the board, that the claims on appeal do not patentably distinguish over the patent claims to Truitt. If this is true, then the claims must be rejected since an inventor can only receive one patent for one inventive thought, and this rule applies in the case of a common assignee. Numerous cases are cited by the Patent Office to sustain its contentions.

In deciding this case we feel it would be well to state two rules applicable to the question of double patenting. First, we think it cannot be denied that an inventor may not receive more than one patent on one invention. Miller v. Eagle Manufacturing Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121; In re Asseff, 173 F.2d 253, 36 C.C.P.A., Patents, 867. Second, we do not think there can be any question that this rule of double patenting applies equally to an application and a patent which are the property of a common assignee. In re Borcherdt, 197 F.2d 550, 39 C.C.P.A., Patents, 1045. There it was stated that two patents may not issue for different forms of the same invention when they are not inventively different. In the Miller v. Eagle case, supra, which was an infringement suit on two patents issued to the same inventor and assigned to the same party, the appellee therein, the Supreme Court set out three classes of cases in which the question of double patenting might arise. They are substantially as follows:

1. Where the second patent is for an invention actually covered by a former patent, even though the claims may be different in terms.

2. Where the second patent contains a broader claim, more generic in its character than the specific claims of the first patent.

3. Where the second patent covers matter described in the first patent, but is essentially distinct and separable from the invention claimed in the first patent. The court held that in cases falling under either one or two above the second patent would be void. But in cases falling under three, the validity of the second patent could be sustained. With reference to the last class of cases the court stated, 151 U.S. at page 198, 14 S.Ct. at page 315:

"* * * it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent."

Shortly after the decision in the Miller case, supra, the Court of Appeals in the Second and the Sixth Judicial Circuits had occasion to apply the principles therein set out in infringement suits on a number of patents issued to the same inventor. The defendants in those suits raised the defense that the later patents were void because of an earlier patent. The same group of patents was under consideration in both cases. The cases were Thomson-Houston Electric Co. v. Elmira & H. Ry. Co., 2 Cir., 71 F. 396 certiorari denied 163 U.S. 685, 16 S.Ct. 1201, 41 L.Ed. 315; and Thomson-Houston Electric Co. v. Ohio Brass Co., 6 Cir., 80 F. 712. A particular question involved in both suits was whether patent No. 424,695, issued to Van Depoele on April 1, 1890, was void because drawn to the same invention as patent No. 397,451,

issued to the same inventor on February 5, 1889. The application which resulted in patent No. 424,695 was apparently filed more than a year before the application which matured into patent No. 397,451, the later application and the earlier patent being for an improvement over the invention which was disclosed in the earlier application and the later patent. In the Elmira case, the court quoted a portion of the testimony of the defendant's expert on cross-examination. This testimony was to the effect that while the claims in the later patent included the apparatus claimed in the earlier patent, the claims of the earlier patent did not cover the devices of the later patent. The court then discussed the defendant's arguments and the principles of law applicable to such cases and stated 71 F. at page 405, the following test of identity:

"The test of identity is whether both, when properly construed in the light of the description, define essentially the same thing. When the claims of both cover and control essentially the same subject-matter, both are for the same invention, and the later patent is void."

On the same page, while discussing the possibility of various inventions originating in a single conception, the court stated the following with reference to inventions and improvements thereon:

"The invention of a new art, machine, or manufacture, and the invention of an improvement upon either, are substantially distinct and separate; and because this is so the order of priority between patents to the same inventor for the different inventions, in the absence of abandonment or disclaimer, is immaterial."

The court went on to discuss the Miller v. Eagle decision, supra, and pointed out that in that case the same inventor had obtained two patents on a spring of peculiar construction, claiming the same spring in combination with the same elements in both patents. The only difference in the two patents was that

in the first two functions were claimed for the spring, while in the second only one of the functions was claimed. From this the court concluded that the Supreme Court had regarded the second patent as merely for one of the functions of the device claimed in the first patent, merely a different use of the same invention. Then the case of Electrical Accumulator Co. v. Brush Electric Co., 2 Cir., 52 F. 130, was discussed. In that case much the same question had been before the court and they had held that an earlier filed, later issued broad patent was not invalid because of a later filed, earlier issued specific patent. Applying those principles the court held that patent No. 397,451 was drawn to distinct and specific structural improvements in the device claimed in patent No. 424,695, and therefore, the later patent was not invalid.

As hereinbefore mentioned the same question was before the Sixth Circuit in the Ohio Brass case, supra. In discussing that question the court cited the case of O'Reilly v. Morse, 15 How. 62, 14 L.Ed. 601, for the proposition that an improvement patent on an earlier patented invention may issue either to the original inventor or a stranger. With reference to the contention of the defendant that if the application for a patent on the basic invention is delayed in the Patent Office until the improvement patent issues, then the patent on the basic invention would be void, the court stated, 80 F. at page 724:

"In cases where the delay in the issuing of the patent for the main invention cannot be charged to the laches or fraud of the patentee, such a rule would be a hard one; and unless it is required by the express words of the statute, or by the express holding of the supreme court, we should be inclined, if possible, to avoid declaring it to exist."

The court then discussed the case of Miller v. Eagle, supra, and concluded from the propositions in that opinion:

"* * * that a patent for a generic invention [1] is not avoided by the fact that a prior invention [1] has been issued for a distinct improvement on that invention, provided always that the language of the application for the first patent and the circumstances of filing it are not such as to dedicate the generic invention to the public." 80 F. at page 728.

On the same page the court also stated,

"It is, of course, true that, if an improvement is an invention separable from the generic invention, the latter is an invention distinct and separable from the improvement."

The court concurred with the decision of the Second Circuit and held the later patent valid.

In these cases the appellate courts of both the Second and the Sixth Circuits held that a later issued generic patent was not invalid because of an earlier issued but later filed improvement patent over the generic invention. The courts apparently felt that to have double patenting it was necessary that the claims of the patents cross-read, that is that not only must the practice of the first patent be an infringement of the second but the practice of the second must be an infringement of the first. This test of double patenting has been followed in many other infringement actions. See, for example, Wirebounds Patent Co. v. Saranac Automatic Mach. Corp., 6 Cir., 37 F.2d 830, and particularly the discussion of double patenting on pages 836–838; reversed for lack of invention, Saranac Mach. Co. v. Wirebounds Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634.

In Standard Brands v. Federal Yeast Corporation, D.C., 38 F.2d 329, 344, it was stated that the defense of double patenting

"* * * is available when the claims of the two patents are the same and when the inventor's first

---

1. Obviously, this should be patent.

patent cannot be practiced without infringing the claims of the second, and the second patent cannot be practiced without infringing the claims of the first."

To the same effect see Puett Elec. Starting Gate Corp. v. Harford Agr. & Breeders' Ass'n, D.C., 88 F.Supp. 360; reversed, for lack of infringement, 4 Cir., 182 F.2d 608; certiorari denied 340 U.S. 878, 71 S.Ct. 125, 95 L.Ed. 638. See also, Oliver United Filters v. Silver, 10 Cir., 206 F.2d 658, 666, to the effect that if the second patent defines a process or apparatus different from the discoveries of the first patent then there is no double patenting, even though they relate to the same invention.

The question of double patenting has been before us on a number of occasions. An early case on that question was In re Mann, 47 F.2d 370, 18 C.C.P.A., Patents, 1020. In that case the application of the appellants was held unpatentable over a patent granted on a later filed co-pending application of Koppelman and Cooper, which was assigned to appellants. In affirming the rejection this court said, 47 F.2d at page 371, 18 C.C.P.A., Patents, at page 1022:

"There cannot be two first inventors *of the same invention*, and, if Koppelman and Cooper were the first inventors, it is obvious that Mann and Koppelman could not be the first inventors. Therefore, *in so far as both applications disclose the same invention*, * * *, appellants by their election have conceded priority of invention to Koppelman and Cooper, and they cannot now make any claims upon the application before us *that could have been made upon the Koppelman and Cooper disclosure*." (Emphasis supplied.)

We also noted the following exception to this rejection in the case of different inventors and a common assignee:

"In certain cases, where there are two applications by different inventors, but held by a common assignee, and there is a disclosure of the same

basic invention in both applications, but in one of which it is asserted that the applicant is the inventor only of an improvement in the basic invention disclosed, a patent issued upon the improvement claim [sic] in such last-named application is not a bar to a patent upon the other application; but the case before us is not one of that character."

The following term we again had occasion to consider the question of double patenting between an application and a patent, by different inventors, but owned by a common assignee. In that case, In re Howard, 53 F.2d 896, at page 899, 19 C.C.P.A., Patents, 759, at page 764, the application on appeal had been filed earlier than that which had matured into the patent, and was for a specific form of the invention claimed in the patent. In reversing the board and granting the patent, this court stated:

"Certainly, if we were not confronted with a common assignee of both inventions, upon the record before us, Howard would clearly be entitled to the allowance of the claims in issue, as an improvement in the invention patented to Peiler, as Peiler in his affidavit impliedly disclaimed being the inventor of such improvement, even though it was described in his application, and also because his application was filed later than that of Howard. Miller v. Eagle Manufacturing Company, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121. If, in such case, an interference had been declared upon the two applications, upon the record made an award of priority would have been made to Peiler upon claims 47 and 55 of his application, and an award to Howard upon the claims here in issue."

A later case, In re Mason, 62 F.2d 185, 20 C.C.P.A., Patents, 782, involving an application and a patent of the same inventor, stated that the test with respect to a rejection on double patenting was whether the application presented claims inventive over the claims of a patent

granted in a co-pending application. But in affirming the rejection on double patenting we said, 62 F.2d at page 188, 20 C.C.P.A., Patents, at page 786:

"Of course, if appellant were not already fully protected as to the matter which he invented, and if he had matter in his application patentable over his patents or other references, an entirely different situation would confront us."

The case of In re Calvert, 97 F.2d 638, 25 C.C.P.A., Patents, 1333, involved a fact situation very similar to that now before us, with the exception that the same inventor was involved in both the patent and the application. There the appellant had filed his application on a broad invention, and about four months later filed an application on an improvement over the broad invention. A patent first issued on the improvement, the claims of which were then used to reject the claims to the broad invention. The sole issue before this court was the rejection on double patenting. We reversed the Board of Appeals because we were of the opinion that the claims of the patent required the presence of a specific element not found in the claims to the generic invention. In that opinion we said, 97 F.2d at page 640, 25 C.C.P.A., Patents, at pages 1336, 1337:

"We think it is clear from what has been said that the appealed claims are distinguishable from claims 6 and 8, as well as the other claims of appellant's patent, in that they cover the broad generic invention which comprises a 'rubber hydrochloride,' *not resistant* to photochemical disintegration, 'having thermoplastic seals,' rather than appellant's improved composition defined in claims 6 and 8 of his patent, *which is resistant* to photochemical disintegration. (Emphasis quoted.)

"In view of the fact that, as we understand its decision, the board rejected each of the appealed claims solely upon the theory that claims 6 and 8 of appellant's patent were *not* limited to a composition containing a 'photochemical inhibitor,' and as we are of the opinion that those claims are so limited, we must hold that the appealed claims differ in subject matter and scope from claims 6 and 8 of appellant's patent and are patentably distinguishable therefrom, and that the board erred in rejecting them on the ground of double patenting." (Emphasis quoted.)

Although this was a case involving a patent and an application of the same inventor we feel that the same reasoning would apply with even greater force where the application and the patent were by different inventors having a common assignee.

We note that the Patent Office Board of Appeals has decided a number of cases on a fact situation similar to that in the instant appeal, but reaching the opposite conclusion than in their present appealed decision. In Ex parte Charles L. Keller, 5 U.S.P.Q. 211, at page 212, the Board of Appeals reversed the examiner's rejection on the ground of double patenting, stating:

"All of the claims have been rejected on the ground of double patenting in view of the patent to Lukens et al., which is owned by the same assignee as the instant application. The patent refers to a prior method which is obviously the method disclosed and claimed in the instant application and then describes certain alleged improvements in the prior process. *All of the claims in the patent are limited to the improved process and none is readable on the disclosure in the instant application.* The patent was granted on an application filed subsequently to the instant application. It is believed this ground of rejection is not well founded. The examiner states that the broader claims on appeal here could have been made in the Lukens et al. patent. This obviously is in error, since Lukens et al. did not claim to be the inventors of the broad process. The patent is too

late to constitute anticipatory art. The examiner asserts that the specific processes disclosed in the Lukens et al. patent and in the application are not patentably different. The claims of the patent purport to be for an improved process and evidently they were allowed on the assumption that Lukens et al. had made an invention. In any event, their claims rest for patentability upon the improvement they made and the inventions claimed in the two cases are different." (Emphasis supplied.)

Another case involving different inventors of a common assignee is Ex parte Sparks and Thomas, 92 U.S.P.Q. 233. There the appellants contended that the patent claims were for an improvement over the invention of the appealed claims and that the patentee could not have made the broad claims on appeal. The board agreed with the appellants' contentions and reversed the examiner as to certain claims which had been rejected "on a ground akin to double patenting." In reversing the board used the following language, 92 U.S.P.Q. page 234:

> "* * * it appears that the patent claims contain an appropriate limitation concerning dividing the solvent-refrigerant into two portions: * * *, and a specified sequence of mixing these portions. *Such feature is not found in the claims rejected on Elmore.* We are of the opinion that this rejection of claims 1 to 3, 6, 8 and 10 cannot be sustained." (Emphasis supplied.)

The board also made the following observation, 92 U.S.P.Q. at page 235, with reference to the broad proposition that broad claims should not be allowed to issue in an application after narrower claims for substantially the same invention have been issued as a patent to the same inventor:

> "The present case can be distinguished from the above decisions by the fact that the patentee and the applicants in the instant application are different persons. While the fact of common ownership would in certain instances make it necessary to have generic claims issue in the first application to go to patent, it would also be subject to the condition that it would not be expected of the assignee to place generic claims in the application of the party who is not in fact the inventor of the genus."

See, also, Ex parte Zimmer, 75 U.S.P.Q. 257, 259, and Ex parte Coss, 95 U.S.P.Q. 333, 336.

Applying the principles set forth in the cited cases to the facts in the instant appeal should lead us to a logical solution of the issue involved. It seems obvious that appellants were the inventors of the generic invention as defined in the appealed claims. The Truitt application was not filed for more than two years after the filing of the instant application, and was limited to an improvement over the generic invention. All of the claims in the Truitt patent are limited to that improvement and none of those claims are readable on the appellants' disclosure. Further, were it possible to declare an interference between the patent and the application, there is no doubt that appellants would be awarded priority of the broad, generic claims while Truitt would be awarded priority of the specific improvement, of which he is the inventor. Also, it is obvious that the assignee is not *fully protected,* in the matter invented by his assignors, by the specific patent to Truitt.

We are of the opinion that the appealed claims are distinguishable from the patent claims in that the improvement is limited to having the helical convolutions in contact with each other; to having the liquid introduced within the helix; and to rotating the helix at such speed that the liquid is forced through the filamentary material, while no such limitations are found in the appealed claims. It is noted that nowhere in the cited prior art is the specific combination claimed in the patent disclosed, although the examiner states that the

various differences over the appealed claims are "conventional." Nor is this combination disclosed in appellants' application. Obviously, the combination disclosed in the patent is an improvement over the method disclosed by the appellants. We are of the opinion that the generic invention is not rendered unpatentable by the fact that a prior patent has been issued on a distinct improvement of that invention. We think this appeal clearly comes within the exception set out in the Mann case, supra, since none of the appealed claims could have been made on the Truitt disclosure, nor do both applications disclose the *same invention*. Further, we think that the appellants should not be denied a patent for their invention because of the specific improvement patent to Truitt merely on the basis of the common assignee. As stated by the board in the Sparks and Thomas case, supra, "it would not be expected of the assignee to place generic claims in the application of the party who is not in fact the inventor of the genus."

From the record it would appear that the above listed limitations in the Truitt claims were the basis for the allowance of the patent. At the time the Truitt patent was allowed all of the appealed claims were before the Patent Office, and had been indicated as allowable by the examiner in charge of the application. If the Truitt claims were not believed patentable over the allowed claims to appellants it was the duty of the examiner to reject them under the instructions set out in paragraph 706.03 (k) of the Manual of Patent Examining Procedure. The pertinent provisions of that paragraph, in effect at the time of the allowance of the Truitt patent, reads as follows:

"The rejection on the ground of double patenting applies also where a claim in an application under examination fails to distinguish patentability over an allowed claim in another application by the same applicant (822 through 822.03) *or of common ownership*." (Emphasis supplied.)

These instructions are now found under paragraph 305 of the revised manual, which reads in part as follows:

"Claims in a later filed application should be rejected if they conflict with claimed subject matter in an earlier filed case of common ownership."

Therefore, if there is no patentable distinction between the appealed claims and the Truitt claims it would appear that the patent should not have been issued. We would not favor denying appellants their patent because of an error made by the Patent Office, if such an error were in fact made. So on this basis we also believe that appellants should be allowed their claims.

We have carefully reviewed all of the cases cited in all of the briefs, as well as making an extensive search on our own. We have also carefully considered all of the arguments advanced, but consider it unnecessary to further discuss them. For the reasons hereinbefore stated, the decision of the Board of Appeals is *reversed*.

Reversed.

WORLEY, J., dissents.

GARRETT, Chief Judge, was present at the argument of this case, but, by reason of illness, did not participate in the decision.

JACKSON, J., retired, sat for COLE, J.