69 F.3d 554
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AKRON POLYMER CONTAINER CORPORATION, Plaintiff-Appellant,
v.
EXXEL CONTAINER, INC., Defendant/Cross-Appellant,
v.
Robert WINER, Counterclaim Defendant.
 Nos. 95-1023, 95-1035.
 United States Court of Appeals, Federal Circuit.
 Oct. 20, 1995.
Rehearing Denied Dec. 8, 1995.
 
 Before NIES, MICHAEL, and CLEVENGER, Circuit Judges.
 PER CURIAM opinion filed for the court. Dissenting opinion filed by Circuit Judge NIES.
 DECISION
 PER CURIAM.
 
 
 1
 Akron Polymer Container Corporation ("Akron") appeals from two orders of the U.S. District Court for the Northern District of Ohio (No. 5:92 CV 0561): the June 30, 1993 order granting summary judgment of infringement of U.S. Patent No. 4,423,829 ("the '829 patent") in favor of Exxel Container, Inc. ("Exxel"); and the September 22, 1994 order concluding that the '829 patent is not unenforceable due to inequitable conduct before the Patent & Trademark Office ("PTO"). Exxel cross-appeals from the September 22, 1994 order insofar as it denies Exxel's claim for attorney fees under 35 U.S.C. Sec. 285 (1988).[1]
 
 
 2
 Because the district court correctly construed the asserted patent claim, and, when the claim is so construed, the accused device clearly infringes it, we affirm the summary judgment of infringement. On the cross-appeal, because the district court did not clearly err in finding that the case was not exceptional, it properly denied Exxel's claim for attorney fees, and we therefore affirm. Because, however, the district court clearly erred in finding that the co-pending application that Exxel failed to disclose was not material to the prosecution of the '829 patent, we overturn the finding of nonmateriality, vacate the judgment of no unenforceability, and remand for further proceedings regarding unenforceability of the '829 patent consistent with this opinion.
 
 DISCUSSION
 Background
 
 3
 Akron filed the suit at bar against Exxel in March 1992, seeking a declaratory judgment that its non-aerosol dispenser product does not infringe Claim 39 of the '829 patent. The '829 patent, entitled "Apparatus for Containing and Dispensing Fluids Under Pressure and Method of Manufacturing Same," is directed to a non-aerosol container assembly for dispensing fluids under pressure. Claim 39, with the language central to the infringement allegation emphasized, is as follows:
 
 
 4
 39. An apparatus for containing and dispensing a liquid under pressure comprising:
 
 
 5
 (a) a container housing having an opening at one end thereof;
 
 
 6
 (b) a flexible cylindrical container integrally formed of a blow molded generally homogeneous elastic plastic composition and having a central longitudinal axis, said blow molded container having a neck portion and a plurality of longitudinally extending creases disposed below said neck portion generally equidistantly from said central longitudinal axis, said blow molded container defining an inner region for containing the liquid under pressure and being folded inwardly along said creases only about said central longitudinal axis in its empty condition and expanded only in substantially radially outward directions when filled with the liquid under pressure, said blow molded container being substantially chemically and physically inert with respect to the liquid contained therein, said configuration and structure of said blow molded container being such that said blow molded container is expanded only in substantially radial directions when said blow molded container is filled with the liquid under pressure;
 
 
 7
 (c) a resilient generally tubular member positioned radially outwardly of said blow molded container, said resilient tubular member extending at least over the length of said blow molded container and being expandable in radial directions when said blow molded container is filled with the liquid under pressure, said resilient tubular member frictionally interacting with said blow molded container when said blow molded container is filled with the liquid under pressure such that said resilient tubular member and said flexible cylindrical container each expands generally uniformly only in directions substantially radially outwardly of said longitudinal axis along its length; and
 
 
 8
 (d) valve means connected solely to said neck portion and extending into said inner region no further than said neck portion of said blow molded container, said valve means further being secured to one end of said container housing at the opening thereof when said blow molded container and resilient tubular member are assembled and positioned therein, said valve means being adapted to substantially prevent evacuation of said blow molded container under normal conditions and capable of selectively providing communication between said inner region of said blow molded container and the outside atmosphere thereby to permit selective amounts of said pressurized liquid to become dispersed and to exit said blow molded container due to the generally radially inward forces provided by said resilient tubular member in its generally expanded condition.
 
 
 9
 Exxel responded by filing an infringement counterclaim. Acting on the parties' cross-motions for summary judgment on the question of infringement, the district court concluded that Claim 39 reads on the Akron dispenser.
 
 
 10
 At the same time that it held in favor of Exxel on the question of infringement, the district court granted Akron's motion for leave to amend its complaint to include the allegation of unenforceability of the '829 patent due to inequitable conduct before the PTO. Specifically, Akron alleged that Exxel's predecessor-in-interest, Container Industries, Inc. ("Container"), the '829 patent's named assignee, intentionally failed to inform the examiner of the existence of a co-pending application, also assigned to Container, claiming quite similar subject matter. According to Akron, the co-pending application, though it was filed after the application that became the '829 patent, was prior art to the '829 patent and should have been disclosed during its co-pendency, and certainly no later than the date it issued as U.S. Patent No. 4,387,833 (the '833 patent).
 
 
 11
 The district court analyzed Akron's allegation of inequitable conduct in two ways. First, after noting that undisclosed information must be material to support a holding of inequitable conduct, the district court approached the question of materiality from the perspective of an interference proceeding, framing the central question as "whether the invention disclosed by [the] Venus [application[2] was patentably distinct from that disclosed by [the] Katz [application[3]." After comparing two pairs of claims from the patents for purposes of illustration, the district court concluded that "the invention disclosed in the Venus '833 Patent was an improvement of the invention disclosed in the Katz '829 Patent ... [and t]herefore, there was no bar to the issuance of the Katz '829 Patent, and the Venus '833 Patent, although issued first, was not prior art to the Katz Patent." The district court then reframed the central question as "whether, at the time of the prosecutions, Attorney Catanzaro thought [the] Venus [application] was prior art to [the] Katz [application] and if so, whether he thought it was material and nonetheless chose not to disclose it to the Katz [application] examiner." Finding no evidence to suggest what "Catanzaro's thoughts were in this regard," the district court concluded that the reference was not material. The trial court also proceeded, despite what it viewed to be a lack of materiality, to conclude that there was also insufficient evidence of culpable intent to deem the patent unenforceable due to inequitable conduct.
 
 
 12
 Finally, after finding that Akron's infringement of the '829 patent was not willful and noting that both parties' litigation conduct had been "troublesome" and "certainly annoying," the district court found that the case was not an "exceptional" one and thus denied Exxel's motion for attorney fees under 35 U.S.C. Sec. 285.
 
 Infringement
 
 13
 Patent infringement analysis involves two steps: the threshold construction of the meaning and scope of the asserted claim, followed by the determination whether the accused product infringes the properly construed claim. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed. Cir. 1995) (in banc), petition for cert. filed, 64 U.S.L.W. 3068 (U.S. July 3, 1995) (No. 95-26). Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree only as to the proper construction of the asserted claim, the question of literal infringement collapses to one of claim construction, a question of law that we review de novo. Id. at 979, 34 USPQ2d at 1329.
 
 
 14
 Paragraph c of Claim 39 recites a "blow molded container" placed within a "resilient tubular member" such that, when the container is "filled with liquid under pressure," "each expands generally uniformly only in directions substantially radially outwardly of [the] longitudinal axis along its length ...." Akron moved for summary judgment of noninfringement on the ground that Claim 39, which, according to its construction, precludes all longitudinal expansion in the resilient tubular member, does not read on its dispenser, the resilient tubular member of which expands both radially outwardly and longitudinally. The district court rejected this construction of Claim 39 after reviewing the claim language, the specification, and the prosecution history, concluding that Claim 39 recites "an outer resilient rubber sleeve which is slid tightly over the plastic liner and which, upon inflation of the liner, expands mostly radially, but also minimally longitudinally."
 
 
 15
 Akron contends on appeal that the district court erred in so construing the claim, renewing its assertion that a construction that permits longitudinal expansion is "precluded by the prosecution history and the plain meaning of Claim 39 terms." We disagree. The language of the claim itself, far from precluding longitudinal expansion, recites "substantially radially outward[]" expansion-i.e., expansion that, while "substantially" radial, is not exclusively radial. In other words, the claim plainly accommodates a degree of longitudinal expansion. The specification supports this view. For example, in discussing the best mode for practicing the claimed invention, the specification indicates that "the expansion of the energy sleeve ... is regulated ... so as to expand substantially in a radial direction with negligible, if any, longitudinal variation." Finally, nothing in the prosecution history of the '829 patent is contraindicative: the prior art references cited by the examiner, and the amendments made in light of them, were directed to the longitudinal expansion of the blow molded container rather than of the resilient tubular member. Thus Katz did not, as Akron insists, disclaim all longitudinal expansion in the resilient tubular member in order to overcome the prior art rejections.
 
 
 16
 Akron raises a host of additional contentions, insisting, for example, that the judgment should be reversed in light of the court's purported comparison of the accused device with an embodiment produced by the patentee; all are unavailing. As we have often observed, with woefully little effect on the bar, "we review judgments, not opinions, and we need not close our eyes to the record where, as in this case, there is a way clearly open to affirm the trial court's action." Super Sack Mfg. v. Chase Packaging Corp., 57 F.3d 1054, 1057 n.2, 35 USPQ2d 1139, 1142 n.2 (Fed. Cir. 1995) (internal quotations and citation omitted).
 
 
 17
 Discerning no reversible error in either the district court's construction of Claim 39 or its application of the claim to the Akron dispenser, we affirm the judgment of infringement in Exxel's favor.
 
 Inequitable Conduct
 
 18
 The ultimate question whether inequitable conduct has occurred is an equitable one; as such, it is committed to the sound discretion of the district court and reviewed by us under an "abuse of discretion" standard. Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed. Cir. 1988) (in banc in relevant part), cert. denied, 490 U.S. 1067 (1989). "A district court would," of course, "necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).
 
 
 19
 As we observed in Carella v. Starlight Archery & Pro Line Co., "[i]nequitable conduct requires, inter alia, proof by clear and convincing evidence of a threshold degree of materiality of the nondisclosed information." 804 F.2d 135, 140, 231 USPQ 644, 648 (Fed. Cir. 1986). We look to 37 C.F.R. Sec. 1.56 for the criterion of materiality, according to which information is material if there is a "substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." See Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1440, 17 USPQ2d 1834, 1839 (Fed. Cir. 1991) (quoting 37 C.F.R. Sec. 1.56).
 
 
 20
 Akron appeals from the district court's finding that the Venus application was not material to the prosecution of the '829 patent. Akron's theory, in brief, is that Container's decision to allow the Venus application to issue first was an implicit election of priority under 37 C.F.R. Sec. 1.78, an election that rendered the '833 patent prior art to the '829 patent within the meaning of 35 U.S.C. Sec. 102(g). Akron's theory, however, is all but foreclosed by our decisions that second-filed, first-issued improvement patents are not prior art, see In re Newton, 414 F.2d 1400, 1405-06 (CCPA 1969); In re Borah, 354 F.2d 1009, 1017-18 (CCPA 1966); In re Stanley, 214 F.2d 151, 157-59 (CCPA 1954), and is squarely foreclosed by our "basic rule that 'any proper rejection involving section 102(g), whether or not combined with section 103 ..., must be based upon evidence of an invention prior to that of the applicant."' In re Clemens, 622 F.2d 1029, 1039 (CCPA 1980) (quoting In re Bulloch, 604 F.2d 1362, 1366 n. 12 (CCPA 1979). Because there is simply no evidence of record in this case indicating that Venus, rather than Katz, was the prior inventor, section 102(g) cannot ground a materiality finding in the way that Akron contends.
 
 
 21
 The conclusion that the co-pending Venus application is not prior art to the '829 patent does not end the inquiry. Both the parties and the district court appear to have assumed, quite incorrectly, that only prior art can be a material reference. As the criterion of materiality makes clear, however, these two categories of information (i.e., "prior art," "material references") are not coextensive. The latter is, indeed, quite a bit broader: any information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent is material. Section 804.03 of the Manual of Patent Examining Procedure (1981), governing the treatment of commonly-owned applications of different inventive entities during prosecution of the '829 patent, reads in relevant part as follows:
 
 
 22
 The requirement [to name the prior inventor] under [37 C.F.R.] section 1.78(c) applies only where the applications are claiming the same invention. This is the meaning of "conflicting claims."
 
 
 23
 The requirement to elect under section 1.78(c) cannot be based on the fact that the claims in the different cases have a common concept, in the sense of one element of a multiple-element claimed different combination.
 
 
 24
 Before making the requirement, with its threat to hold the case abandoned if the election is not made by [the common] assignee, the examiner must make sure that claims are present in each case to the same invention. Test: Could the case be put in interference, either on the claims as presented or on insubstantially modified claims?
 
 
 25
 If the answer to this test is in the affirmative, then the requirement can be made; if the answer is in the negative, then the requirement for election cannot be made.
 
 
 26
 This section requires an examiner to determine if the multiple co-pending applications of the common assignee have conflicting claims such as would warrant an interference proceeding in the case of adverse parties. In a case such as the one at bar, where there is a considerable amount of overlapping content in the specifications and claims of both applications/patents, a reasonable examiner would certainly have considered it quite important to know about the Venus application while deciding whether to allow the Katz application to issue as a patent. We have no difficulty concluding, based on the undisputed evidence of record, that the district court clearly erred in finding that the Venus application was not material to the prosecution of the '829 patent; it was, to the contrary, highly material thereto.
 
 
 27
 The district court's decision to grant Exxel's summary judgment motion of no unenforceability flowed from its finding that the Venus application was not material to the prosecution of the '829 patent. Because that finding was clearly erroneous, the district court's decision to grant Exxel's motion was necessarily in error. Accordingly, we vacate the remainder of the district court's inequitable conduct rulings, vacate its judgment on unenforceability, and remand the case for retrial of the questions whether Container's failure to disclose the highly material Venus application satisfies the threshold showing of intent to mislead and, assuming the threshold degree of intent is found, whether inequitable conduct occurred. See Halliburton Co., 925 F.2d at 1439, 17 USPQ2d at 1838.
 
 Conclusion
 
 28
 In summary, the district court correctly construed Claim 39 of the '829 patent and properly applied it to the undisputed facts of record regarding Akron's non-aerosol dispenser product. We therefore affirm the summary judgment of infringement. However, the district court clearly erred in finding that the application that issued as the '833 patent was not material to the prosecution of the '829 patent, an error that vitiates the remainder of its analysis of the unenforceability of the '829 patent. Having duly considered and rejected Exxel's cross-appeal on the question of entitlement to attorney fees under 35 U.S.C. Sec. 285, on the appeal we therefore affirm-in-part, vacate-in-part, and remand.
 
 COSTS
 
 29
 Each party to bear its own costs.
 
 
 30
 NIES, Circuit Judge, dissenting.
 
 
 31
 While I agree with the majority's analysis of the inequitable conduct issue, a remand is not necessary for redetermination of liability. I would hold that as a matter of law, Akron does not infringe Exxel's '829 patent.
 
 CLAIM CONSTRUCTION
 
 32
 The claim construction adopted by the trial court and upheld on appeal ignores the plain teaching of the patent that the resilient tubular member has negligible, if any, longitudinal expansion. The trial court held that the claim language teaches that the tubular member may have "minimal" longitudinal expansion. While the difference between "minimal" and "negligible" appears slight, the claims, the specification and the prosecution history all demonstrate that Exxel did not demarcate the bounds of its claims to include longitudinal expansion of twenty-five percent which occurs in the accused device.[1] At most, only longitudinal expansion which is unavoidable and not designed into the product is within the scope of the claim.
 
 
 33
 First, the claim language itself clearly limits the invention to radial expansion only. The claim 39(c) states in relevant part: "said resilient tubular member and said flexible cylindrical container each expands generally uniformly only in directions substantially radially outwardly of said longitudinal axis along its length." The claim requires both tubes to expand only substantially radially. Patentee's interpretation necessarily requires the words "each" and "only" to be read out of the claim.
 
 
 34
 Second, the specification instructs that the longitudinal movement, if any, would be negligible or extremely minor. Further, Figure 2 and Col.10, 11.55-58 indicate that the longitudinal length would be "slightly less" in a filled state versus an unfilled state. Moreover, the background art section lists irregular expansion as a disadvantage in the prior art. With such uncontrolled expansion, the expanding container may come in contact with the outer walls causing friction and damage to the expanding container. A skilled artisan would understand that longitudinal expansion would present many of the same problems inherent in the prior art. Additionally, one skilled in the art would obviously learn from the claims and the specification that longitudinal expansion would practically be nil or that a negligible contraction would occur.
 
 
 35
 Third, the prosecution history establishes that Exxel purposely limited the expansion "solely" in the radial direction to avoid prior art. Exxel argued that Gortz, and Kain, both prior art references, provided for the longitudinal expansion of both the inner and outer tubes, whereas Exxel's patent application "provides solely for radial uniform and regulated expansion." (emphasis added). To permit Exxel now to claim by judicial interpretation what it earlier disclaimed during prosecution is impermissible. Standard Oil Co. v. American Cyananmid Co., 774 F. 2d, 448, 452, 227 USPQ 293, 296 (Fed. Cir. 1985).
 
 
 36
 Fourth, unlike almost all claim disputes that we review, the Patent and Trademark Office (PTO) has reviewed Exxel's claim interpretation and has rejected it. The PTO indicated during a reexamination of Akron's later issued patent, which embodies the accused device, that the '829 patent teaches away from the Akron patent because the '829 patent limits longitudinal expansion to negligible amounts whereas the Akron patent requires longitudinal expansion. The examiner stated: "a 25% elongation can not be considered to be 'negligible."' While it is no doubt true that a later issued patent may infringe an earlier issued patent, that only applies when the later issued patent incorporates the earlier patent. Here, the PTO has determined that the two inventions are different, finding that Akron's invention was not taught in Exxel's patent. The non-aerosol container field is a crowded one. Both parties had to claim narrowly to avoid prior art. Exxel accomplished that requirement by disclaiming longitudinal expansion.
 
 
 37
 Last, I believe the trial judge committed reversable error in construing the claim by examining Exxel's commercial embodiment to determine the meaning of the claim. Patent claims are not defined by the physical embodiment of the claims, but should be construed from the patent itself. Here, because Exxel's product expands substantially longitudinally, Exxel does not even practice its own invention, so that reliance on Exxel's product was manifestly improper. While it is permissible for a trial judge to view a commercial embodiment to get an understanding of what the words in the patent mean, it is error to use the commercial embodiment to define the scope of the claim.
 
 INFRINGEMENT
 
 38
 No reasonable jury could ever find that a twenty-five percent expansion longitudinally falls within the meaning of a "minimal" or "negligible" expansion. Perhaps if the accused device expanded in the range of a few percent, then a reasonable jury could go either way. However, to say that twenty-five percent expansion is "negligible" defies credibility.
 
 
 39
 Second, similar to the error with claim construction, the trial judge committed reversable error by comparing the accused product with patentee's commercial product and finding that they were the same. The statute requires infringement of the claim, not infringement of patentee's commercial product. 35 U.S.C. Sec. 271(a). Here the trial judge found that Exxel's and Akron's devices both expand radially about 600% and longitudinally about 25%. However, that comparison improperly shifts the focus of the infringement inquiry from the patent claims to the patentee's device which might or might not embody the written patent claims. That the two devices "are virtually identical" and that "the purposes of both devices is the same" does not matter, because the prior art also had similar physical structures and undoubtedly had the same purpose.
 
 CONCLUSION
 
 40
 I would hold as a matter of law that the Akron device does not infringe the asserted patent.
 
 
 
 [1]
 The district court did not enter final judgment in the case until September 22, 1994, after which Akron timely filed this appeal
 
 
 [2]
 The '833 patent derived from U.S. Patent Application No. 216, 191, entitled "Apparatus for Containing and Dispensing Fluids Under Pressure and Method of Producing Same," naming Frank Venus as the inventor
 
 
 [3]
 The '829 patent derived from U.S. Patent Application No. 182, 155, naming Hyman Katz as the inventor
 
 
 [1]
 Webster defines "minimal" as "constituting the least possible in size, number, or degree." Whereas "negligible" indicates ""so tiny or unimportant or otherwise of so little consequence as to require or deserve little or no attention." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1438, 1514 (1969)